AMERICAN CENT. LIFE INS. CO. v. SMITH. (No. 6005.)

(Court of Civil Appeals of Texas. San Antonio. May 1, 1918.)

INSURANCE ⟨⟩665(1) — ACTION — EVIDENCE—SURRENDER.

In action on life insurance policies, the defense being release and surrender of the policies, evidence held to show such release and surrender were made, and were not induced by fraud or false representations of insurer.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Mary S. Smith against the American Central Life Insurance Company. From judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

Boyle, Ezell, Houston & Grover, of San Antonio, for appellant. Cobbs & Cobbs, Marshall Eskridge, and Lewright & Douglas, all of San Antonio, for appellee.

MOURSUND, J. The appellee sued appellant to recover the amount claimed to be due on two insurance policies for $5,000 each, issued by appellant on or about December 5, 1913, on the life of her husband, Robert Allen Smith, in which policies appellee was named as beneficiary. She alleged that her husband died on or about April 14, 1915; that the policies were surrendered to appellant on

or about December 2, 1914; and that Smith and appellee were induced to surrender said policies by reason of false and fraudulent representations of the appellant's agents. The appellant admitted the issuance of the policies, but pleaded that the same were surrendered to it by appellee and her husband, for a valuable consideration, on or about December 2, 1914, and canceled long prior to the death of Smith. Appellant denied any fraud on its part in procuring the release and surrender of the policies, and in addition alleged that Smith had procured the issuance of said policies by willful, false, and fraudulent representations made in his application for the issuance thereof; also that the policies had lapsed by reason of failure to pay premiums.

In answer to the fourth special issue the jury found that A. L. Davis and C. B. Welliver, or one of them, on or about December 2, 1914, as an inducement to obtain the consent of Smith to surrender to defendant for cancellation the two policies of insurance, represented to Smith that in any suit brought by defendant for the cancellation of said policies the defendant could and would prove by Mrs. J. L. Long the alleged facts set out in the signed statement of said Mrs. Long, dated November 25, 1914. In answer to the fifth issue the jury found that such representation was false. In answer to issue No. 5½ they found that such representation was material, and in answer to section (a) of issue No. 6 that Smith relied on the truth of such representations, and in answer to section (b) of such issue that Smith was induced thereby to surrender said policies.

Two sets of similar issues were also submitted; one relating to the statement of Dr. Baird, and the other to that of Dr. Small. The jury found that Davis and Welliver represented to Smith that defendant could and would prove by said persons the alleged facts set out in written statements signed by them respectively, and that such representation in each instance was true, and was material, and that the representation with reference to Dr. Small was relied on by Smith and he was induced thereby to surrender the policies. The questions whether Smith relied on the representation relating to Dr. Baird, and whether he was induced thereby to agree to surrender and cancel the policies, were not answered.

The jury also found that Smith was not acting as the agent of defendant in obtaining the policies from plaintiff at the time Smith, Davis, and Welliver were in El Paso; that plaintiff did not receive any of the money paid Smith by defendant as a consideration for the cancellation of the policies; that plaintiff, at the time she made the indorsement signed by her on said policies and forwarded same to her husband, intended thereby to surrender to defendant her interest and claim as beneficiary under said policies; that

Smith did not learn of the falsity of any of the representations; that plaintiff, during her husband's lifetime, did not learn of the falsity of any of said representations; that Smith was financially able to have paid the second annual premium within the time stipulated in the policies, and would have done so had he not entered into the contract for the surrender of the policies.

Special issues Nos. 1, 2, 4, and 5, requested by defendant after the refusal of its peremptory instruction, were submitted, and by its answers thereto the jury said that Smith did not have, and had never had, consumption at the time he made application for the policies; that he had changed his place of residence on account of his health, or had been advised by a physician so to do, prior to November 24, 1913; that such representation was not material to the risk; that defendant would have filed suit for the cancellation of the policies before the expiration of the year from date of issuance thereof, if the policies had not been delivered to defendant, and by reason thereof did not file said suit. Judgment was entered for appellee for $12,925, being the amount of the policies, interest, penalty, and attorney's fees.

Smith made application for the insurance on November 24, 1913. In answer to the question in the application whether he had ever had any of certain named diseases, including consumption, or "any other serious disease," the only disease mentioned by him was "pneumonia in 1893." In answer to question whether any physicians or surgeons had been employed or consulted for himself during the past two years, he said "No." He also gave a negative answer to the question whether he had ever changed residence or tried "a change of climate" on account of his health, or been advised to do so by a physician. He had consulted at least four physicians in San Antonio during the time mentioned in his application. He had a well-developed case of tuberculosis at the time he made the application, and had been informed of such condition. There is no escape from the conclusion that he deliberately concealed from the insurance company information which, if it had been furnished, would have resulted in the rejection of his application. He was a soliciting agent for a life insurance company in 1903, when he married, and continued in that business for many years, being finally appointed agency director and placed in charge of 27 states and Cuba. His career in the insurance business shows that he was fully conversant with the importance of the questions to which he returned false answers, and there is no escape from the proposition that he willfully and deliberately perpetrated such a fraud on appellant as would have entitled it to cancel the policies in a suit brought for that purpose.

The policies provide that they shall be incontestable after the first policy year except

for nonpayment of premiums. During October or November, 1914, Mr. Davis, appellant's general agent for Texas, received information leading him to believe that Smith's answers were false. Upon his advice an investigation was made. The company received additional information indicating that the report received by Davis was true. Thereupon Mr. Welliver, its general attorney, came to Dallas and suggested that an interview be arranged with Smith to see whether he would agree to cancel the policies, or whether a suit for cancellation would be necessary. Smith had moved to New Mexico. Davis arranged a meeting with Smith at El Paso. At this meeting Welliver told Smith it was his intention to file suit to cancel the policies before the expiration of the first policy year, unless they were surrendered by cancellation. He told Smith they intended to repudiate the policies on several grounds: First, that he had tuberculosis at the time he took out the policies and knew it; second, he had consulted doctors within two years prior to taking out the policies, and, of course, knew that, too; third, he had changed his residence upon the advice of a physician; and, fourth, he had been associated with his wife, and that she had tuberculosis. The fourth ground was withdrawn after Smith exhibited a photograph of his wife. Welliver said: "I have enough here to show that you consulted doctors, and had tuberculosis and knew it." They told him they had evidence that he had tuberculosis and that he had been treated by a Dallas physician. Welliver also testified that he told Smith they had not had much time to look up evidence because the time was short, but had enough information to justify it (presumably suit for rescission), and that he had deceived them as to consulting doctors and having tuberculosis; also that they absolutely repudiated the policies and would file suit for rescission, and Welliver would come to San Antonio and Galveston and see if he could find any further evidence to support the evidence he already had. He showed Smith four written statements signed by persons living at Dallas.

Davis testified:

"I told him that we had evidence that he had tuberculosis at that time, and also that we had evidence that he had been treated by reputable physicians in Dallas for tuberculosis some two years prior to making application for insurance to our company, and also that Dr. T. W. Vardell and Dr. Whitfield Harrell had told me that he (Smith) had tuberculosis, and had been treated for this dread disease while he was living in Dallas, which I think was in the years of 1911 and 1912."

After Smith had considered the matter for a day or two an agreement was reached and reduced to writing whereby he surrendered the policies for cancellation in consideration of $500. He telephoned his wife and had her to indorse on the policies a release as beneficiary and send same to him, whereupon he delivered them to Welliver. When the written statements were shown Smith he denied that they were true, but, according to Welliver's testimony, after the agreement had been consummated admitted that he had tuberculosis at the time he applied for the policies, and stated that if he had listened to doctors at San Antonio and not gone to Galveston he would have been better off. Smith took the copies of the statements home with him, but took no steps with reference to such statements, and died on or about April 14, 1915.

Plaintiff alleged that Smith knew the statements were false, but relied on the allegation that Welliver and Davis falsely represented to him that the persons whose statements were produced would testify to the facts stated therein, and that he believed such representations and was induced thereby to agree to a cancellation of the policies. Plaintiff made no issue with reference to the statement given by J. Frank Smith. The testimony was undisputed that the statements of Dr. Small and Dr. Baird coincided with their testimony. In other words, they testified that the statements signed by them were true and correct, and the jury so found. Mrs. Long, in a half-hearted way, attempted to repudiate one sentence contained in her statement. That sentence reads:

"While Mr. and Mrs. Smith lived at 3813 Ross avenue, Dr. Baird examined Mr. Smith and advised him to go to San Antonio, claiming Mr. Smith had tuberculosis."

She said she did not think this statement was true. Her testimony is so uncertain that it ought not to be accepted as sufficient to show that she did not make to the person who wrote her statement the sentence above quoted. But she testified that as a matter of fact such knowledge as she had was derived from Mrs. Smith, and that Mrs. Smith told her:

"That Dr. Baird told her (Mrs. Smith) that on account of a slight rectal operation on Mr. Smith, which sometimes, though very seldom, led to lung trouble, he (the doctor) advised that Mr. Smith go to San Antonio until he gained a certain weight and she intimated that that was one of their reasons for moving."

In answer to another question, she again said that Mrs. Smith told her that one reason for moving to San Antonio was that Dr. Baird had recommended it.

No witness testified that Davis or Welliver, or either of them, told Smith that the persons who signed the statements would testify to the truth of the facts contained in such statements. They told Smith the grounds on which they would base the suit for cancellation. They put him in possession of the information they had received, and furnished him copies of the four statements mentioned in the petition. They referred to their information as "the evidence they had," but that was a representation as to what persons had told them, and not a representation concerning what the persons would testify on a trial. In order to obtain

a representation that Welliver and Davis told Smith the persons mentioned would respectively testify on a trial to the facts set out in the statements signed by them, a meaning must be given the language of which it is not fairly susceptible. Fraud is not to be lightly inferred or established by surmise or conjecture. There is no evidence that any false representations were made by Davis or Welliver.

If there had been any testimony to the effect that Welliver and Davis represented to Smith that Mrs. Long, Dr. Baird, and Dr. Small would testify in the suit for cancellation to the facts set out in their signed statements, under the facts of this case, such representation would have been a mere expression of opinion. There is not a particle of testimony tending to show that Welliver or Davis led Smith to believe they had ever interviewed either of said persons. The signatures were witnessed by other persons, and furnished no inference that the statements had been obtained in person by Welliver or Davis. He had just as good an opportunity to determine what the persons would probably testify to as Welliver and Davis had. He was furnished copies of the statements on which they based their opinion; no artifice or fraud was practiced to prevent him from making such investigation as he deemed proper and forming his own judgment. Under such circumstances, the statement of what certain persons would do in the future furnishes no basis for a claim of fraud.

The particular portion of Mrs. Long's statement repudiated by her is that wherein she said in effect that Dr. Baird claimed Smith had tuberculosis. Smith knew that Mrs. Long was not present at any interview between himself and Dr. Baird, and that she spoke from hearsay in stating that Dr. Baird claimed Mr. Smith had tuberculosis and advised him to go to San Antonio. She could not testify to such facts of her own knowledge and Smith knew it, and knew he could prove by Dr. Baird, his wife, and himself that what she said was hearsay. The instrument contained no statement from which he could infer that she claimed to have personal knowledge of the facts stated with reference to such matter, and it contained other statements which he knew to be hearsay. So it is apparent that, after we assume that Smith was told Mrs. Long would testify to all the facts contained in the instrument signed by her, he assumed that Davis and Welliver meant she would testify that either Baird, Mrs. Smith, or Smith had told her these matters, and that he was misled into so believing she would so testify and induced thereby

203 S.W.—26

to surrender the policies. The statement of Dr. Baird, of which a copy was furnished him at the same time, read as follows:

"This is to certify that about three and a half years ago I examined Mr. R. A. Smith of Dallas, and thought it best for him to change his place of residence and so advised. He had a cough, slight fever, and a slight hemorrhage from his lung at the time of my visit."

He knew that if Dr. Baird testified in accordance with such statement the testimony would not be hearsay, and, if believed, would show that he had answered falsely a question contained in his application with reference to change of residence. On this important point at least Mrs. Long's hearsay testimony was in accord with her signed statement. Smith also knew that Dr. Baird's statement that he had a cough, slight fever, and a slight hemorrhage from his lung, if testified to, would tend strongly to support the contention that he had tuberculosis. He knew that his answers would not bear investigation, and knew that if a suit was brought the investigation would be made in San Antonio, and what could and probably would be discovered. He knew that if the suit was brought he would lose it, if the truth was developed. He took his time about making an agreement, and secured $500 when he was only entitled to the premiums paid. It is inconceivable that Smith would not have done just what he did, had the statement of Mrs. Long never been referred to or shown him. Judging from the ordinary experience of mankind, in the absence of any representation as to what she would testify (assuming there was such a representation), he would in all reasonable probability have made the agreement. Conscious of his fraud and of the fact that sufficient had been discovered to cause an investigation sure to lead to his defeat in the courts, he elected to save the costs and embarrassment of litigation, and take $500 instead of what he was entitled to, namely, $221.46. No sane man, as conversant with the insurance business as Smith was, would have done otherwise. The evidence does not support a finding that the representation as to what Mrs. Long would testify to, assuming there was such a representation, induced Smith to make the agreement.

We deem it unnecessary to discuss and dispose of the many assignments of error urged in the brief. The peremptory instruction in favor of defendant should have been given, and judgment entered for defendant. The testimony with regard to the allegations made has been fully developed.

The judgment is reversed, and judgment rendered in favor of defendant.